UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:07-cv-1167-WTL-DML |
| ) | |
| THOMAS J. RITZ, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment (Docket Nos. 58 & 79). The parties have informed the Court that these motions are fully briefed and are ripe for ruling. Accordingly, the Court now **GRANTS**[1] the Government's motion and **DENIES** the Defendants' motion.

**I.  SUMMARY JUDGMENT STANDARD**

The fact that the parties have filed cross-motions for summary judgment does not alter the standard set forth in Federal Rule of Civil Procedure 56(c)(2).  When evaluating each side's motion the court simply "'construe[s] all inferences in favor of the party against whom the motion under consideration is made.'" *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 561-62 (7th Cir. 2002) (quoting *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998)).

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

---

[1] The Court notes that the Government has not moved for summary judgment as to Count 3 of its Amended Complaint (Docket No. 27), which deals with nitrite.

moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the admissible evidence presented by the non-moving party must be believed and all reasonable inferences must be drawn in the non-movant's favor. *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007). Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## II. BACKGROUND

The Cottonwood Campground (the "Campground") is located in Cedar Grove, Indiana. The Campground, which is open from mid-May through mid-October, is comprised of between fifty and eighty campsites,[2] each of which has a water spigot and a sewer hookup for campers or recreational vehicles. The water spigots at the campsites are marked "non-potable." The Campground also has two restrooms with sinks, toilets, and hot showers.

In 1984, Thomas Ritz purchased the Campground, along with some additional property, from George and Ellen Winters. Thomas[3] ran the Campground for a short time before selling it

---

[2] Thomas Ritz testified that the Campground had between seventy and eighty campsites. Docket No. 79 Ex. 1 at 107-08. Ronald Ritz testified that the Campground had only fifty or sixty campsites. Docket No. 79 Ex. 2 at 70-71.

[3] For clarity's sake, in this Entry the Court will refer to the individual Defendants by their first names.

to his brother Ronald Ritz in 1986.

In 1998, the Environmental Protection Agency ("EPA") issued an Administrative Order (the "Order") related to the Campground. This Order, which the Defendants deny receiving, ordered the Campground to, among other things, sample the Campground's water system for nitrate and total coliform. The Order also required the Defendants to notify individuals served by the Campground's water system of the failure to monitor the system.

From 2002 onward, the Defendants tested the water for nitrate once or twice. They only tested for total coliform twice – once on June 12, 2003 and again on June 25, 2003.

In 2007, the Government filed this Safe Drinking Water Act ("SDWA") enforcement action seeking injunctive relief and civil penalties. In November 2008, the Defendants filed a Motion for Judgment on the Pleadings or in the Alternative a Motion for Summary Judgment (Docket No. 58). The Court has construed that motion as one for summary judgment and accordingly has considered the Defendants' evidentiary submission in support of their motion.

In March 2009, the Government filed a cross-motion for summary judgment (Docket No. 79). The Court denied both motions as moot in May 2008, after the parties reported that they had settled this case. Unfortunately, in July 2010, the parties reported that they were ultimately unable to resolve issues surrounding the settlement. Accordingly, the parties informed the Court that their dispositive motions were fully-briefed and the parties were awaiting the Court's ruling. *See* Docket No. 103 at 1.

### III. DISCUSSION

**A.     The Defendants' campground is a Public Water System.**

The SDWA defines a public water system ("PWS") as "a system for the provision to the

3

public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals." 42 U.S.C. § 300f(4)(A). The relevant regulation states:

> PWS means a system for the provision to the public of water for human consumption through pipes or, after August 5, 1998, other constructed conveyances, if such system has at least fifteen service connections or regularly serves an average of at least twenty-five individuals daily at least 60 days out of the year.

40 C.F.R. § 141.2.

In their motion for summary judgment, the Defendants claim that the Campground is not subject to the SDWA because it is not a PWS. The Defendants' argument is two-fold. First, they assert that because the Campground has not "played host to a minimum of twenty-five individuals daily for at least sixty days out of a year for each year that Plaintiff has required testing of the water system," Docket No. 58 Ex. 1 at 3, then it is not a PWS. Even assuming that the Campground has in fact not hosted twenty-five individuals for at least sixty days out of the year, the Defendants' motion must be denied. The Campground undisputedly has at least fifteen service connections. *See* Docket No. 79 Ex. 1 at 107-08; Docket No. 79 Ex. 2 at 70-71. Although the Defendants argue that because they did not have fifteen service connections *in use* at least sixty days out of the year, they are not a PWS, this argument is ultimately unpersuasive. The Defendants do not cite any case law, or any authority whatsoever, to support their interpretation of the statute or the regulation. Furthermore, the Defendants' interpretation ignores the presence of the conjunction "or" after the phrase "fifteen service connections." The plain language of both the statute and the regulation defines a PWS as a system for the provision of water for human consumption that has at least fifteen service connections *or* a system for the

4

provision of water for human consumption that serves an averge of at least twenty-five individuals daily at least sixty days out of the year.

The undisputed evidence indicates that the Defendants' campground contains at least fifty water spigots, far more than the fifteen required for a PWS. *See* Docket No. 79 Ex. 1 at 107-08; Docket No. 79 Ex. 2 at 70-71. Because the Defendants have more than the threshold fifteen service connections, their campground is a PWS subject to the SDWA. Accordingly, the Defendants' motion for summary judgment is **DENIED**. To the extent that the Government moved for summary judgment as to the applicability of the SDWA, the Government's motion is **GRANTED**.

      **B.**      **Violations of the SWDA.**

Having concluded that the Defendants do indeed operate a PWS, the Court now turns to the issue of the Defendants' liability for failure to test for nitrate (Count 2 of the Amended Complaint) and total coliform (Count 4 of the Amended Complaint).

With respect to nitrate, the relevant regulation states: "All public water systems . . . shall monitor to determine compliance with the maximum contaminant level for nitrate." 40 C.F.R. § 141.23(d). Transient, non-community water systems like the one operated by the Defendants are required to monitor for nitrate annually. *Id*. § 141.23(d)(4). In the instant case, there is no evidence that the requisite annual tests were conducted by the Defendants. Rather, the evidence reveals only one test for nitrate between 2002 and 2007 – a test conducted on March 11, 2003, *see* Docket No. 79 Ex. 27, and the possibility of a second nitrate test in August 2008, although the record does not reveal where, or by whom, this testing was conducted. *See* Docket No. 79 Ex. 34. Therefore, the record establishes that the Defendants failed to conduct annual tests for

nitrate as required by the relevant regulation and the Government's motion for summary judgment is **GRANTED** as to Count 2 of the Amended Complaint.

Total coliform sampling is regulated by 40 C.F.R. § 141.21. A non-community water system, like the Defendants' system, that serves 1,000 individuals or fewer, "must monitor each calender quarter that the system provides water to the public." 40 C.F.R. § 141.21(a)(3)(i).

> If a routine sample is total coliform-positive, the public water system must collect a set of repeat samples within 24 hours of being notified of a positive result . . . . A system which collects one routine sample/month or fewer must collect no fewer than four repeat samples for each total coliform-positive sample found.

*Id.* § 141.21(b)(1). Further, if the system, like the Defendants', collects "fewer than five routine samples/month" and "has one or more total coliform-positive samples" then the system "must collect at least five routine samples during the next month the system provides water to the public, except that the State may waive this requirement." *Id.* § 141.21(b)(5).

In the instant case, the Defendants' PWS tested positive for total coliform on June 12, 2003. Docket No. 79 Ex. 32. The Defendants conducted a second total coliform test on June 25, 2003. Docket No. 79 Ex. 33. However, no further testing occurred. It is undisputed that the State did not waive the follow-up sample requirement, therefore, the Defendants' failure to conduct the requisite sampling, and the failure to report the results of any follow up sampling, was a violation of the applicable regulation. Accordingly, the Government's motion for summary judgment is **GRANTED** as to Count 4 of the Amended Complaint.

In addition to setting water quality standards and mandating testing, the SDWA also requires "[e]ach owner or operator of a public water system" to give notice of: (1) any failure to comply with an applicable maximum contaminant level or treatment technique requirement of, or a testing procedure prescribed by, a national primary drinking water regulation or (2) any

failure to perform monitoring required by the SDWA. *See* 42 U.S.C. § 300g-3(c)(1)(A). Here, the undisputed evidence indicates that the Defendants failed to inform guests at the Campground that their PWS tested positive for both nitrate and total coliform. Further, the undisputed evidence indicates that the Defendants have failed to inform guests of their failure to comply with the monitoring requirements for nitrate and total coliform. Accordingly, summary judgment is also **GRANTED** as to Count 6 of the Amended Complaint.

      C.      **The 1998 Administrative Order.**

The Government's final argument deals with Count 1 of the Amended Complaint – Failure to Comply with 1998 Administrative Order. This Order required the Defendants to, among other things: (1) sample, and if necessary re-sample, the PWS for nitrate; (2) report the results of the nitrate sampling as required under 40 C.F.R. § 141.31(a); (3) comply with the coliform bacteria sampling regulations set forth in 40 C.F.R. § 141.21(a); and (4) report the results of their total coliform sampling to the EPA and the Indiana Department of Environmental Management.

The undisputed evidence indicates that the Defendants have failed to comply with these requirements. The Defendants performed, at most, two tests for nitrate between 2002 and 2008. *See* Docket No. 79 Ex. 27; Docket No. 79 Ex. 34. The Defendants have also only performed two tests for total coliform. *See* Docket No. 79 Ex. 32; Docket No. 79 Ex. 33. This falls far short of compliance with the Order. Accordingly, the Government's motion is also **GRANTED** as to Count 1 of the Amended Complaint.

## CONCLUSION

For the foregoing reasons the Government's Motion for Summary Judgment (Docket No. 79) is **GRANTED**. The Defendants' Motion for Summary Judgment (Docket No. 58) is **DENIED**. Finally, the following briefing schedule is set for the remedy issue. The Government's opening brief is due by **September 14, 2010**. The Defendants' response is due by **October 5, 2010**. The Government's reply, if any, is due by **October 12, 2010.** If a hearing on remedies is necessary, then the Court will set one, by a separate order, after the issue is fully briefed.

SO ORDERED: 08/25/2010

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to:

Daniel Steven Tomson
Mercer Belanger
dtomson@indylegal.com

Shelese M. Woods
United States Attorney's Office
shelese.woods@usdoj.gov